446 P.2d 307

STATE of Utah, Plaintiff and Respondent,

v.

John CRUZ, Defendant and Appellant.

No. 11075.

Supreme Court of Utah.

Oct. 23, 1968.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

Galen Ross, R. J. Leedy, of Mitsunaga & Ross, Salt Lake City, for appellant.

CALLISTER, Justice:

Defendant, John Cruz, appeals from his conviction of automobile homicide.[1] His claimed error is that the trial court erroneously allowed into evidence the results of a blood test administered shortly after the accident. He claims that the sample of his blood was taken against his will[2] and contrary to the provisions of 41–6–44.-10, U.C.A.1953 (Supp.1967).

Cruz was the driver of an automobile involved in a collision with another car. An occupant of the latter was fatally injured. Cruz sustained injuries and was taken to a hospital for treatment and examination. While awaiting X-rays, he was asked by the investigating officers to submit to a blood test to determine the alcoholic content thereof. He refused and the officers consulted, via telephone, with an assistant county attorney. They were advised that, if necessary, the blood test

1. 76–30–7.4, U.C.A.1953 (Supp.1967).

2. Contrary to the 4th and 14th Amendments to the United States Constitution.

could be taken by force in view of a recent United States Supreme Court decision.[3] In the meantime, they had conversed over the telephone with Cruz's attorney who informed them that he was advising his client to refuse to submit to the test. Although no physical force was exerted, it is conceded that the blood sample was extracted contrary to the permission or will of Cruz.

Section 41-6-44.10 (referred to above) provides as follows:

(a) Any person operating a motor vehicle in this state shall be deemed to have given his consent to a chemical test of his breath, blood or urine for the purpose of determining the alcoholic content of his blood, provided that such test is administered at the direction of a peace officer having reasonable grounds to believe such person to have been driving in an intoxicated condition. The *arresting officer* shall determine within reason which of the aforesaid tests shall be administered. If such person has been placed under arrest and has thereafter been requested to submit to any one of the above chemical tests and refuses to submit to such chemical test, the test shall not be given and the arresting officer shall advise the person of his rights under this section.[4] * * * [Emphasis added.]

It is the State's contention that the driver of an automobile, because of the implied consent, must submit to a test prior to arrest, but not after. This would result in the anomalous situation of an arrested person being afforded more rights than one not under arrest.[5] The legislature could not have intended such a result.

In other jurisdictions having similar statutes it has been held that a person, prior to arrest, cannot be compelled to submit to a blood or other test to determine the alcoholic content within his body. In Otte v. State[6] the court held that for the implied consent of a person to be effective, the person must have been arrested or taken into custody before the test is given.[7]

In Schutt v. Macduff[8] the court found the implied consent statute of New York unconstitutional because there was no provision limiting the implied consent to instances where there had been a lawful arrest. The statute was subsequently amend-

---

3. Evidently referring to Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), which is not in point inasmuch as the statute involved differs from Utah's and the person involved was under arrest at the time.

4. The statute provides that if the refusal were unreasonable, the persons' driver's license may be revoked for one year.

5. Such interpretation might render the statute constitutionally invalid as being unjustly discriminatory and a denial of equal protection of the law.

6. 172 Neb. 110, 108 N.W.2d 737, 741 (1961).

7. Also see State v. Ball, 123 Vt. 26, 179 A.2d 466 (1962).

8. 205 Misc. 43, 127 N.Y.S.2d 116 (1954).

ed, confining the implied consent to cases in which there had been an arrest; the phrase "If such person refuses" was substituted with "If such person having been arrested * * * refuses." The amended New York statute is similar to the one in Utah.

■ From a review of the cases and the language of Section 41-6-44.10, it becomes apparent that the legislature deliberately selected the phrasing "the arresting officer" and "If such person has been placed under arrest" with the intention that the implied consent to a chemical test arises only upon arrest and that only an arrested person is compelled to elect whether he will submit to a chemical test or lose his license. Consequently, a person prior to arrest has not given his implied consent to a chemical test and, therefore, his actual consent must be given.

■ In the instant action, appellant did not give his actual consent to the blood test and his forced submission thereto was not in compliance with the express terms of Section 41-6-44.10. The trial court erred in admitting the results of this test.

The judgment of the trial court is reversed and the case is remanded for a new trial in accordance with this opinion.

CROCKETT, C. J., and TUCKETT and, ELLETT, JJ., concur.

HENRIOD, Justice (dissenting).

Reluctantly, I dissent. The main opinion is based, not on the unconstitutionality of the statute, but upon its stupidity, resulting in our decision that the intent of the legislature was not as intended, under an act which is not ambiguous, but clear as a bell. I wonder if the judicial branch of the government has the legislative authority to vacate an alleged silly legislative act on the ground that we think it is silly. Many legislatures seemingly have passed silly legislation in the minds of many people, but this court has not, so far as I know, condemned such legislation for such reason alone.

I concede that on the surface it appears a little absurd to conclude that one that has not been arrested must succumb to a blood test, while he who is placed under arrest is immune from such treatment. However, there is a counterpoint to such a conclusion. If the person examined submits to the test required, he may prove himself innocent of the charge that imminently could be filed. If he is pretty sure his blood test will show him to have been drunk, he may prefer to be arrested, and refuse the test, thus giving him time to exonerate himself by the physiotherapy of passage of time.

I can see a purpose in the statute: If a person, after arrest, refuses to take the test, such refusal might be admissible in

evidence tending to prove his guilt. In the case of the unarrested person who refuses the test but is required to submit thereto, his refusal has little or no weight as evidence, since the result of the test is the only thing pointing to guilt or innocence. Besides, under the statute he has *consented* to the test by using the highways,—just as a nonresident using our highways consents that the Secretary of State shall be his agent upon whom service of process may be accomplished in a civil suit.[1]

The fact that an arrested person need not take the test, but his unarrested brother has to submit to it, may raise a meritorious point that the statute unconstitutionally may be discriminatory. But the main opinion is not bottomed on such a premise.

The only question involved in this case is whether permission to use highways in a motor vehicle will justify a requirement to take a blood test at the request of a police officer if there is reason to believe there has been an overindulgence in the consumption of liquor by someone who is particeps to a traffic incident. The main opinion does not treat this area of the law, but simply says the legislature did not mean what it said.

Although the main opinion discounts Schmerber v. State of California[2] be-

cause there was no statute akin to ours and the person involved was under arrest, such fact situation does not devour the meat of the decision. Consequently I believe the Schmerber case is apropos here.

If the main opinion had said this legislation was unconstitutional because it violated such and such section or sections of the state or federal constitutions, and show why and cite cases in support thereof I might, if convinced, go along,—but otherwise, no.

---

1. Title 41–12–8, U.C.A.1953.

2. 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).