STATE OF NEBRASKA, APPELLEE, V. COLUMBIAN M. RODGERS, APPELLANT.
466 N.W.2d 537

Filed March 8, 1991.    No. 90-072.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Robert M. Spire, Attorney General, and Denise E. Frost for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

Columbian M. Rodgers, claiming that the trial court erred in failing to suppress certain evidence and in receiving that evidence at the defendant's trial, appeals his conviction for possession with intent to deliver cocaine.

Rodgers also complains that his sentence of not less than 2 nor more than 5 years' imprisonment is excessive. Rodgers was given 212 days' credit on the sentence for time served while he was awaiting disposition of his case. We affirm.

On October 31, 1989, Rodgers, after waiving a jury trial, was tried before the district court for Douglas County on a charge of possession with intent to deliver a controlled substance (cocaine), a Class II felony, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988), carrying a penalty of not less than 1 nor more than 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Reissue 1985).

The State's evidence at trial consisted of a seven-page exhibit of police and laboratory reports, which was received without a timely objection. That exhibit reflected that on June 12, 1989, Daniel L. Clark, an Omaha Police Division officer, was in the area of the Logan Fontenelle housing project, which was known for a high rate of drug trafficking. The officer had made numerous drug arrests there. While patrolling in his cruiser, Clark observed four people, two of whom were sitting on a porch of a unit at the east end of a complex. A third, the defendant, was leaning over the porch with his hands extended. The two people seated on the porch were looking closely at something in Rodgers' hands. Clark suspected that a narcotics transaction was taking place. A fourth person was located 15 feet to the east of the defendant.

When Officer Clark drove his cruiser to the south side of the

project, the fourth person, appearing startled, turned in the direction of Rodgers and shouted "one time." According to Clark, shouting "one time" is used to alert drug dealers that a police officer is near. At that alert, Rodgers turned, looked at Clark, quickly straightened his stance, placed whatever he was holding into his right hand, clenched his right hand into a fist, and quickly walked away from Clark. Rodgers walked toward the north and around a corner of the project unit. As Rodgers rounded the corner of the housing unit, Clark observed the defendant reaching both hands toward the zipper in the front of his pants. Clark left his cruiser and began to approach the defendant. Rodgers was then out of the sight of the officer for 5 seconds. When Rodgers reappeared from around the corner of the housing unit, he walked directly toward Clark and said, "There[']s not any work over here Red." According to Clark, "There[']s not any work" means in street language "There[']s nobody selling crack" cocaine. At that point, Clark observed that the front zipper of Rodgers' pants, where Rodgers had earlier been reaching, was opened wide and that the defendant's pants were spread apart in the zipper area. Clark suspected that Rodgers had hidden contraband in the front of his underwear. Clark patted Rodgers for weapons, but found none. During the pat-down, Clark felt bulges in both front pockets of Rodgers' pants, which bulges Rodgers said were cash. These "wads" of money consisted of several $20, $10, and $5 bills.

Clark directed Rodgers to walk around the corner of the complex, where no one was present. At a suppression hearing, Clark testified he placed Rodgers under arrest for suspicion of possession of a controlled substance with intent to deliver when he took the defendant around the corner of the housing unit. There Clark instructed Rodgers to pull the front of his pants and underwear away from his body. Rodgers complied with Clark's instruction and the officer observed two plastic bags, one containing marijuana and the other crack cocaine, in Rodgers' underwear. Clark then placed Rodgers in handcuffs. Officer Mike Stewart arrived as backup, and both officers began walking Rodgers toward Clark's cruiser. While walking to the cruiser, Rodgers pulled out the bag of marijuana and discarded it. The marijuana was retrieved by Stewart, who gave

it to Clark. Rodgers was then taken to police headquarters, where 35 "rocks" of crack cocaine were confiscated from the underwear Rodgers was wearing.

At police headquarters, Clark informed Rodgers of each of his *Miranda* rights, which the defendant waived. The defendant agreed to talk to the officer and stated that he had been selling cocaine to pay a debt. Rodgers admitted to selling cocaine three times at a ballfield, selling cocaine after his release from the Youth Development Center-Kearney in the summer of 1988, intending to give marijuana to the two people on the porch, and putting the bag of marijuana in his underwear when he went around the corner of the housing unit. The laboratory report confirmed that the items seized were marijuana and 35 rocks of crack cocaine.

After Rodgers was charged with possession of cocaine with intent to deliver, the defendant filed a motion to suppress "any and all evidence obtained" from him because it was obtained subsequent to what he alleged was an "unlawful arrest." After an evidentiary hearing, the trial court overruled Rodgers' motion to suppress. At that hearing, Clark testified that drug dealers in the Logan Fontenelle area hide drugs in their underwear and that he had previously found contraband down the front of dealers' pants on "numerous occasions."

In his first assignment of error, Rodgers claims that the trial court erred in overruling his motion to suppress evidence and in allowing the evidence to be received at the defendant's bench trial over objection. However, the bill of exceptions reveals that no timely objection was made to the State's offer of the police and laboratory reports before they were received in evidence.

In a criminal trial, after a pretrial hearing and order overruling a defendant's motion to suppress evidence, the defendant must perform the additional procedural step of objecting at trial to the admission of the evidence which was the subject of the suppression motion in order to preserve the question of admissibility for appeal. *State v. Cole*, 236 Neb. 269, 460 N.W.2d 665 (1990); *State v. DiBaise*, 232 Neb. 217, 440 N.W.2d 223 (1989).

In Rodgers' case, the trial consisted of the State's offering into evidence exhibit 1, consisting of seven pages of police and

laboratory reports. When the State made its offer, the court asked Rodgers' counsel whether there was any objection to exhibit 1, to which the defense counsel responded, "No, Your Honor." The exhibit was received in evidence. At that point the State rested. The court then asked, "Does the defendant wish to present evidence?" Defense counsel replied,

> No, the defendant does not wish to present evidence, but would object to — renew our motion to suppress that was filed and heard by the Court in September of this year, would renew that motion, and object to the Court's consideration of any evidence regarding drugs found on the defendant as being fruits of an illegal search and seizure.

The defendant's renewed motion to suppress and his objection were subsequently overruled, and the court found the defendant guilty as charged.

If a party fails to make a timely objection to evidence, the party waives the right to assert on appeal prejudicial error concerning the evidence received without objection. *State v. Cole, supra*; *State v. Chapman*, 234 Neb. 369, 451 N.W.2d 263 (1990); Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1989). Objection to the admission of evidence is not timely unless it is made at the earliest opportunity after the ground for the objection becomes apparent. *State v. Giessinger*, 235 Neb. 140, 454 N.W.2d 289 (1990). Clearly, the defendant failed to timely object to the State's evidence. The defendant's motion and objection came after the evidence was received by the trial court. Any issue of an improper search and seizure was not preserved for appeal, and therefore Rodgers' first assignment of error has no merit.

In his second assignment of error, Rodgers claims that his sentence is excessive. An order imposing a sentence within the statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Hall, ante* p. 169, 465 N.W.2d 150 (1991). Rodgers' sentence was well within the statutory limits and in fact was at the lower end of the prescribed statutory penalty.

Rodgers claims the court abused its discretion in sentencing him. Specifically, Rodgers argues that the court did not

consider in its decision his age, the type of crime, or the crime's lack of violence. See *State v. True*, 236 Neb. 274, 460 N.W.2d 668 (1990). The record does not support Rodgers' contention that these factors were not considered. There is no question that the sentencing judge considered Rodgers' age when he remarked, "All I can do is take into consideration that he is only 16, is salvageable, has got a long life ahead of him." At the time of sentence, Rodgers was within 37 days of being 17 years old. The court also considered the type of crime Rodgers committed, when the court referred to community frustration with the drug epidemic. Finally, the court remarked about the violence and theft associated with the drug epidemic. Rodgers claims that the crime he committed was not an act of violence. While ostensibly true, this court has recognized that possession with intent to deliver a controlled substance is not a victimless crime. *State v. Eary*, 235 Neb. 254, 454 N.W.2d 685 (1990). Additional factors to consider include past criminal conduct. Rodgers' presentence report reflects that the defendant had committed four previous felonies. As a result of his illegal activities, Rodgers had previously been removed from his home on three different occasions.

The factors listed by the defendant are *among* those to be considered in the imposition of a sentence, see *State v. Turner*, 221 Neb. 852, 381 N.W.2d 149 (1986), but there is no mandatory list.

> "[I]n considering a proper sentence, the trial court is not limited in its discretion to any mathematically applied set of factors. It is necessarily a subjective judgment and includes the observations of the sentencing judge as to the demeanor, attitude, and all facts and circumstances surrounding the life of the defendant. . . ."

*State v. Dean, ante* p. 65, 76, 464 N.W.2d 782, 790 (1991), quoting *State v. Stranghoener*, 208 Neb. 598, 304 N.W.2d 679 (1981). Based on the foregoing standard, we cannot say that the sentence imposed upon Rodgers was an abuse of discretion. Rodgers' second assignment of error is also without merit. The judgment and sentence of the district court are affirmed.

AFFIRMED.